THE TOWNSHIP OF EATONTOWN, PLAINTIFF, DEFEND-
ANT IN ERROR, v. MONMOUTH COUNTY ELECTRIC
COMPANY, DEFENDANT, PLAINTIFF IN ERROR.

Submitted June 25, 1909—Decided November 15, 1909.

Under the Franchise Tax act of 1900 (*Pamph. L., p.* 502), providing,
in substance, that moneys payable by the holders of franchises to
any taxing district for its exclusive use pursuant to contract,
shall continue to be paid notwithstanding the act, and if less in
amount than the sum payable under the act shall be considered as
a payment on account thereof, and the difference made up by pay-
ment pursuant to the act—*Held*, that when a street railway com-
pany under annual contract liability of $250 to a township was
taxed more than that amount in the township under the act of 1900
and paid the tax in full, such payment included payment of the
contract liability without separation into parts or specific appro-
priation by the company of the proper share of the fund to such
contract liability.

On error to the Monmouth Circuit Court.

For the plaintiff in error, *McDermott & Enright.*

For the defendant in error, *James Steen.*

The opinion of the court was delivered by

PARKER, J. The Monmouth County Electric Company,
plaintiff in error and defendant below, is the successor
through a sale under foreclosure proceedings and a subsequent
mesne conveyance, to the property and franchises of the At-
lantic Highlands, Red Bank and Long Branch Electric Rail-
way Company. Both companies were presumably organized
as street railroad companies. Among the franchises taken
over by the Monmouth company was the right of locating
tracks and running cars thereon within the limits of the town-
ship of Eatontown, subject to the obligations contained in the
township ordinance of June 10th, 1897, granting such right,
and which ordinance was duly accepted by said Atlantic High-
lands company. The present action is to recover six annual

payments of $250 each, reserved by said ordinance as a condition precedent to the right to operate the street railroad. The provisions of the ordinance on this subject are contained in section 9, which reads as follows:

"9. That as a further condition precedent said company shall keep and maintain perpetually that portion of the highway lying between their tracks and for eighteen inches on each side thereof in good repair, corresponding to the rest of said highway..

"And as to the rest of said highway, said company shall, within fifteen months from the date of the passage of this ordinance, pay to the township of Eatontown, or to such municipality or municipalities as shall succeed to the township, one-half of all moneys which shall have been expended within the fifteen months aforesaid by said committee upon said highway, whether in building, macadamizing, making or repairing the same, and a failure to pay the same within thirty days after the bill therefor shall have been presented to said company, shall render the franchise hereby granted void. That as a further condition precedent to the right to maintain and operate its said line, the said company shall, on the first day of October, A. D. 1898, pay to the said township committee the sum of two hundred and fifty dollars, and shall annually thereafter and on or before the first day of each October succeeding, pay to the said township committee the sum of two hundred and fifty dollars, and failure to make such payment within twenty days after the same shall be due, shall render this franchise herein granted and this ordinance void."

The claim was for the annual payments due on October 1st, 1901, and succeeding years to and including 1906. The case was submitted to a Circuit Court judge sitting without jury, on an agreed state of facts, and judgment entered for the full amount of the claim with interest. One of the defences set up below, and now embraced in an assignment of error, was that there was no privity of contract between the original grantee of the franchise and its successor, the present plaintiff in error, and that therefore the agreement to make the annual payment of $250, resulting from an acceptance of the ordi-

nance, was not binding on the latter. The trial judge very properly overruled this defence upon the authority of *Bridgeton* v. *Traction Company*, 33 *Vroom* 592, a Supreme Court decision, to which may be added the case of Asbury Park and Sea Girt Railroad Co. *v.* Township of Neptune, in this court, decided at June term, 1909, but not yet reported. That the defendant, as successor to the franchises of the Atlantic Highlands Company, took with them their burdens, of which this annual payment was one, is, we think, entirely clear.

The other principal ground of defence urged is, however, well taken. It is that since the passage of the act of 1900 (*Pamph. L., p.* 502), providing for the taxation of license privileges enjoyed by persons and corporations operating under municipal franchises, the annual payment stipulated in the ordinance was in effect merged in and formed part of the payment prescribed by that statute. An examination of the scheme and provisions of the act will make this plain. Its first section provides that all the property, real and personal, *and franchises* of persons * * * or corporations other than municipal, or corporations taxable under the General Railroad and Canal Tax act of 1884 and its supplements, which * * * have the right to use or occupy, and occupying streets, highways, roads, &c., shall be valued, assessed and taxed as provided in the act. Section 5 imposes a uniform annual franchise tax of two per cent. on gross receipts. This tax is to be apportioned by the state board of assessors among the various taxing districts "in proportion to the value of the property located in, upon or under any public street," &c., therein, as shown by the statements filed pursuant to the act with the state board, and revised and equalized by that body, if necessary, under section 6 as amended by *Pamph. L.* 1903, *p.* 225. The amount so apportioned to each taxing district interested is certified to the assessors by the state board on or before the third Tuesday of October, annually, and within five days thereafter the local assessors are to send statements of such amount to the party from whom it is due, and collect it in the same manner as ordinary taxes are collected. The relation of this procedure to the company's liability of $250 per

year arising out of the ordinance and its acceptance by the defendant's predecessor is exhibited in section 7 of the act of 1900, which may as well be quoted in full:

"7. All money now payable by any person, copartnership, association or corporation, to any taxing district for its exclusive use pursuant to any contract, agreement, resolution or ordinance (except money expended for paving or repairing any street, highway or other public place, or taxes upon property, real and personal), shall be paid notwithstanding this act, and when paid shall be considered a payment on account of, or in full, as the case may be, for the franchise tax to be apportioned according to the provisions hereof; if the amount so payable is greater than the amount of the franchise tax to be so apportioned, such payment shall be in lieu thereof; and if less, the difference in amount shall be payable as herein provided."

In other words, if the amount due under pre-existing contracts be greater than the amount of the apportionment, the act of 1900 does not affect the contract payment; but if the contract payment be less than the apportionment, the taxing district benefits by the difference.

Coming now to the circumstances of the present case, the agreed state of facts shows that for each of the years 1901 to 1906, inclusive, the share of the franchise tax levied against the Monmouth County Electric Company apportioned to the township of Eatontown has been considerably in excess of the $250 payment reserved in the ordinance; that statements have been annually presented to that company by the township collector for the amounts due in the respective years, and that said company has paid the amount of each statement as presented in full except that of 1906. It does not appear specifically in the state of the case, but seems to be assumed by counsel as a fact, that such payments were made as if no contractual obligation existed and without any intimation on the part of either township or electric company to indicate that out of the amount paid $250 was apportioned to discharge the contract obligation, and it was claimed for the township that the company by failing to split its apportion-

ment into two parts and make one payment of $250 and another for the remainder of the apportioned amount, or, if one payment of the whole was made, by failing to specify that $250 of it was to be applied to the amount required by ordinance, left itself liable for the $250 per annum in addition.

The trial judge dealt with this first under defendant's plea of set-off, and on the theory that the payment of the franchise tax apportionment in full gave no right of action in favor of the company against the township, held that it could not be considered as a defence by way of set-off. He further held that the company waived its right to the credit of $250 on the franchise tax by paying the latter direct. We are unable to take so strict a view of the statute. Manifestly the object of the act of 1900 was to impose a uniform franchise tax on public utilities without impairing any local contracts they might have entered into. To accomplish this the seventh section was carefully drawn to provide that all moneys payable to municipalities under contract, in consideration of franchises conferred, should be paid as before, and if in excess of the franchise tax apportionment should be in lieu thereof; if less than such apportionment, it should be considered as payment on account of it. When, as in the present case, the apportionment exceeds the contract obligation, the precise form of the payment of the total amount apportioned, or the presence or absence of specific acts of appropriation and designation of the money paid, becomes, in our view, inconsequential, so long as the payment is made. When the money is paid over, the statute makes the appropriation of it. We think, therefore, that payment in full of the apportioned amount operated to discharge both contract obligation and franchise tax. To hold otherwise would be to defeat one of the evident purposes of the act. The fact that the township authorities, since the passage of the act of 1900, made no demand for the $250 payment as distinct from the amount apportioned, but contented themselves with rendering statements for the amount of the annual apportionment, is significant that they so understood the situation.

The further point is made for the township that the case shows the $250 payment was reserved for road repair, so as to bring it within the parenthetical exception of section 7. But the trial judge does not find this as a fact, nor does it appear on an examination of the ordinance. On the contrary, a reading of the quoted section of the ordinance shows that there are two distinct provisions relating to road paving and repairing, and that the $250 payment is a "further condition precedent to the right to operate and maintain its said line," contained in a complete and separate sentence and with no allusion to road repair or construction.

The payments of 1901 to 1905, inclusive, therefore, discharged all obligation of the company for the annual contract payment for those years. As to 1906, we gather from the judge's findings that no payment had been made for that year. There was a request that if the defendant were held bound by the contract of its predecessor, only the annuity of 1906 could be recovered. This request was proper except that it should have included interest from October 1st, 1906.

The facts essential to a determination of the case having been either stipulated by counsel or found by the trial judge, and spread on the record, this court is in a position to render such judgment as should have been rendered in the trial court. *National Bank* v. *Berrall*, 41 *Vroom* 757, 761; *Sullivan* v. *Visconti*, 39 *Id.* 543, 551, and cases cited. Let the judgment be reversed and judgment be entered in favor of the plaintiff below for $250, with interest from October 1st, 1906.

*For affirmance*—REED, VOORHEES, JJ.   2.

*For reversal*—THE CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, BOGERT, VREDEN-BURGH, GRAY, DILL, CONGDON, JJ.   12.